UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MUDEER HUSSAIN,<br><br>             Petitioner,<br><br>v.<br><br>CHRISTOPHER J. LAROSE, in his official capacity as Senior Warden of Otay Mesa Detention Center, et al.,<br><br>           Respondents. | Case No.: 3:26-cv-00194-RBM-MSB<br><br>**ORDER DENYING MOTION TO ENFORCE HABEAS ORDER**<br><br>**[Doc. 8]** |

Pending before the Court is Petitioner Mudeer Hussain's ("Petitioner") Emergency Motion to Enforce Habeas Order ("Motion to Enforce"). (Doc. 8.) For the reasons set forth below, the Court **DENIES** the Motion to Enforce.

## I.  BACKGROUND

**A. Factual Background**

Petitioner is a native and citizen of Pakistan who entered the United States without inspection on January 5, 2025. (Doc. 1 ¶¶ 14–15.) That same day, Petitioner was charged as inadmissible under 8 U.S.C. § 1182(a)(7)(A)(i)(I) and taken into ICE custody. (Doc. 4 at 2.) About three months later, on April 15, 2025, the Department of Homeland Security ("DHS") issued Petitioner a Notice to Appear, which initiated removal proceedings under 8 U.S.C. § 1229a against him. (Doc. 4-1 at 2–3; Doc. 1 ¶ 18.) On September 17, 2025, the immigration judge denied Petitioner's applications for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT"), and ordered Petitioner removed to Pakistan. (*See* Doc. 4-1 at 6–9.) Petitioner appealed the immigration judge's order, and that appeal is pending. (Doc. 1 ¶ 19.) Because Petitioner's immigration proceedings

1

remain pending, he has not received a final order of removal. (*Id.* ¶ 21; Doc. 4 at 2.)

On January 13, 2026, Petitioner filed a Petition for Writ of Habeas Corpus ("Petition") pursuant to 28 U.S.C. § 2241, challenging the lawfulness of his detention. (Doc. 1.) The Court found that Petitioner's detention under 8 U.S.C. § 1225(b) had become unreasonably prolonged and that due process required that he be provided with a bond hearing. (Doc. 6.) Accordingly, on January 27, 2026, the Court granted the Petition and ordered Respondents "to arrange an individualized bond hearing for Petitioner before an immigration judge within fourteen (14) days of entry of this Order to determine whether his continued detention is warranted." (*Id.* at 7–8 (emphasis omitted).) The Court further ordered that, at the bond hearing, "Respondents shall bear the burden of establishing, by clear and convincing evidence, that Petitioner poses a danger to the community or a risk of flight." (*Id.*) Five days after the Order issued, on February 2, 2026, Petitioner received a bond hearing before an immigration judge ("IJ"), who denied release on bond because she found that Petitioner would be a flight risk. (*See* Doc. 14-1 ("Hearing Trans.") at 2–10.)

**B.    Procedural Background**

On February 25, 2026, Petitioner filed his Motion to Enforce. (Doc. 8.) That same day, the Court set a briefing schedule. (Doc. 9.) After the Court granted two joint motions for extensions of time to brief the Motion to Enforce (*see* Docs. 11, 13), Respondents filed their Response in Opposition to Petitioner's Motion to Enforce Judgment ("Response") (Doc. 14) on March 25, 2026, and Petitioner filed his Reply in Support of Emergency Motion to Enforce Habeas Order ("Reply") (Doc. 15) on March 28, 2026. On May 1, 2026, the Court issued an Order Requiring Supplemental Briefing. (Doc. 19.) Petitioner timely filed his supplemental brief. (Doc. 20.) Respondents filed their responsive supplemental brief a day after their deadline to do so. (Doc. 22).[1]

---

[1] Respondents indicate there was "no good excuse for why [they] failed to comply with the deadline originally set by the Court," "apologize to [Petitioner], his attorney, and the Court[ ] for the unnecessary delay," and "humbly request[ ] the Court at least consider

2

**C.      The Bond Hearing**

The bond hearing was held on February 2, 2026.  (Hearing Trans. at 1.)  Petitioner was represented at the bond hearing by different counsel than his counsel in the proceedings before this Court.  (*See id.* at 1–2.)  At the outset of the bond hearing, the IJ noted that Petitioner requested a Pashto interpreter, but that "[n]one of the interpreting services have a Pashto interpreter available."  (*Id.* at 2.)  The IJ explained that "we are going to proceed with these bond proceedings because we are under a district court order" and because "there is evidence sufficient to rule on the bond" without testimony from Petitioner.  (*Id.* at 2–3.)

At the time the IJ explained this, the evidence she had considered consisted of the bond redetermination request, the hearing notice setting the case, and evidence submitted by Respondents on January 29, 2026.  (*Id.* at 3.)  One hour before the hearing, while the IJ was already on the bench, Petitioner's counsel filed evidence as well.  (*Id.*)  Petitioner's filing consisted of medical records and progress notes, the Board of Immigration Appeals ("BIA") receipt, and identification of a sponsor.  (*Id.* at 3, 5, 7–8.)  The IJ admitted and reviewed Petitioner's evidence during the bond hearing.  (*Id.* at 5.)

All Parties agreed that Respondents bore the burden of establishing, by clear and convincing evidence, that Petitioner poses a danger to the community or a risk of flight.  (*See id.* at 6, 8.)  Respondents did not argue that Petitioner was a danger to the community.  (*Id.* at 6.)  Respondents argued that Petitioner was a flight risk because "[t]he removal order that already existed placed limited relief before [Petitioner]," "the CLP bar[2] did apply in

---

[their] arguments given Respondents' prior compliance with the Court's orders in this matter."  (Doc. 22 at 2.)  Although the Court deeply appreciates the time-sensitive nature of petitions for writs of habeas corpus and its mandate to rule on petitions expeditiously, *see Van Buskirk v. Wilkinson*, 216 F.2d 735, 737–38 (9th Cir. 1954), the Court will consider Respondents' brief even though it was filed one day late.

[2] The "CLP bar" refers to the Circumvention of Lawful Pathways rule, which "establishes a 'rebuttable presumption of ineligibility for asylum' that applies to [noncitizens], other than Mexican nationals, 'who ente[r] the United States from Mexico at the southwest land

his case," "there was . . . an adverse credibility finding . . . by the immigration judge," and "[t]he sponsor information . . . includes identification [ ] only, but there is no letter or any indication that any individual would accept [Petitioner] if released on bond." (*Id.* at 6, 8.) Petitioner argued that Respondents had not met their burden because Respondents presented no criminal history, Petitioner has a record of appearance at his immigration proceedings and is still fighting his case, and time constraints were the only reason Petitioner did not have more information about his sponsor. (*Id.* at 8.) The IJ found that Respondents met their burden to show Petitioner was a flight risk:

> What impacts the court's decision is that [Petitioner] has a removal order from an immigration judge. As of September 17, 2025, all relief was denied, and he was ordered removed to Pakistan, and he has a pending appeal with the [BIA]. And based on the immigration judge's findings, it's not clear if [Petitioner] will be successful, or not on his appeal. So, his appeal is tenuous at best . . . . He did not provide testimony at his own merits hearing, relying on *Grava*,[3] which the court does find interesting. The immigration judge [during the removal proceedings] also . . . found that [Petitioner] did not provide credible testimony . . . , which weighs against [Petitioner], as well. The court also found that there was a circumvention of lawful pathways to asylum, which also weighs against [Petitioner]. . . . [Petitioner] entered the United States without admission on January 5th, 2025. . . . He didn't present himself at a designated port of entry and seek asylum, or present himself to immigration officials. When an individual enters the United States without inspection, it indicates to the court that perhaps, they are evading immigration officials and trying to remain undetected. So, that's also a negative factor that the court considers in determining that [Petitioner] is a significant flight risk.

border . . . without documents sufficient for lawful admission." *Reyes Lopez v. Bondi*, No. 25-798, 2025 WL 3090747, at *1 (9th Cir. Nov. 5, 2025) (quoting 8 C.F.R. § 1208.33(a)(1)); *see, e.g.*, *A.A.M. v. Andrews*, 815 F. Supp. 3d 1124, 1131 (E.D. Cal. 2025) (applying the CLP bar and finding that "[b]ecause Petitioner is a native of Somalia and entered through the southern border, he was not eligible for asylum").

[3] In *Grava v. INS*, the Ninth Circuit held that "an applicant need not testify on his or her own behalf, except to swear to the truth of the application [for asylum], and may rest on the application alone, subject to [DHS] examination at the hearing." 205 F.3d 1177, 1180 (9th Cir. 2000).

4

3:26-cv-00194-RBM-MSB

(*Id.* at 8–10.)

## II.   **LEGAL STANDARD**

A writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art. I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973).  "Writs of habeas corpus may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions." 28 U.S.C. § 2241(a).  The petitioner bears the burden of demonstrating that "[h]e is in custody in violation of the Constitution or laws or treaties of the United States." *Id.* § 2241(c)(3).

The Court's "review of an immigration judge's determination of flight risk is for abuse of discretion." *Soriano v. Hernandez*, — F. Supp. 3d —, 2026 WL 969764, at *4 (W.D. Wash. Apr. 10, 2026) (citing *Martinez v. Clark*, 124 F.4th 775, 779, 784–85 (9th Cir. 2024)).  The same is true of the Court's review of "constitutional challenges to an IJ's detention determination." *Loba L.M. v. Andrews*, No. 1:25-CV-00611-JLT-SAB, 2026 WL 710307, at *5 (E.D. Cal. Mar. 13, 2026) (citing *Martinez*, 124 F.4th at 784).  Abuse of discretion review "does not involve 'reweigh[ing] evidence' but rather determining whether the IJ 'applied the correct legal standard.'" *Perez Velasquez v. Bondi*, Case No.: 26-cv-01759-GPC-DDL, 2026 WL 1042479, at *5 (S.D. Cal. Apr. 16, 2026) (quoting *Martinez*, 124 F.4th at 784).  In other words, the Court's review "is limited to whether the IJ's decision reflects clear legal error or is unsupported by sufficient evidence." *Loba L.M.*, 2026 WL 710307, at *5 (cleaned up).  "[T]he reviewing court must bear in mind that 'the government's discretion to incarcerate non-citizens is always constrained by the requirements of due process.'" *Id.* (quoting *Martinez*, 124 F.4th at 784).

## III.   **DISCUSSION**

Petitioner argues that the bond hearing did not comply with the Court's previous Order granting the Petition or with due process.  (Doc. 8 at 2.)  Specifically, Petitioner

3:26-cv-00194-RBM-MSB

argues that the bond hearing was constitutionally deficient because: (1) "[n]o interpreter was provided despite a contemporaneous request and undisputed language barrier;" (2) the IJ denied bond by inappropriately considering the strength of Petitioner's BIA appeal and Petitioner's decision to not testify during his removal proceedings; and (3) the IJ provided only a "boilerplate" written order that contained "no findings responsive to the burden this Court imposed." (*Id.* at 2–5; Doc. 15 at 4–6.) Respondents' main argument is that Petitioner should be required to exhaust administrative remedies. (Doc. 14 at 2–5.) The Court finds that: (1) exhaustion should be waived; (2) the IJ erred by holding the bond hearing without the requested interpreter; and (3) even though the IJ erred, Petitioner cannot prevail on his due process claim because he cannot demonstrate prejudice.

**A.    Exhaustion**

Habeas claims are accompanied by a prudential exhaustion requirement. *Hernandez v. Sessions*, 872 F.3d 976, 988 (9th Cir. 2017). Exhaustion is prudentially required where:

> (1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision;
>
> (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and
>
> (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review.

*Id.* (quoting *Puga v. Chertoff*, 488 F.3d 812, 815 (9th Cir. 2007)).

"If a petitioner fails to exhaust prudentially required administrative remedies, then 'a district court ordinarily should either dismiss the petition without prejudice or stay the proceedings until the petitioner has exhausted administrative remedies.'" *Hernandez*, 872 F.3d at 988 (quoting *Leonardo v. Crawford*, 646 F.3d 1157, 1160 (9th Cir. 2011)). But a district court may waive the prudential exhaustion requirement if "administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury will result, or the administrative proceedings would be void." *Laing v. Ashcroft*, 370 F.3d 994, 1000 (9th Cir. 2004) (citations omitted).

3:26-cv-00194-RBM-MSB

Here, even if the *Puga* factors weighed in favor of exhaustion, Petitioner has demonstrated that the Court should waive exhaustion because one of the exceptions[4]—irreparable injury—is present.   Respondents argue that "detention alone is not an irreparable injury" sufficient to waive exhaustion.  (Doc. 14 at 5 (citing *Reyes v. Wolf*, No. C-20-0377-JLR, 2021 WL 662659, at *3 (W.D. Wash. Feb. 19, 2021), *aff'd sub nom. Diaz Reyes v. Mayorkas*, 2021 WL 3082403 (9th Cir. July 21, 2021)).)  The Court agrees with that proposition generally.   But the irreparable injury here is not the mere fact of Petitioner's detention.  It is Petitioner's detention based on an allegedly inadequate bond hearing *after* the Court's previous finding that Petitioner's detention had already become unreasonably prolonged and Order that he receive a constitutionally sufficient bond hearing.  *See Perez Velasquez*, 2026 WL 1042479, at *4 (collecting cases); *Tiboko-Tifuh v. Noem*, Case No. 26-cv-1215-JO-DEB, 2026 WL 1603795, at *3–4 (S.D. Cal. June 4, 2026) (waiving exhaustion because requiring BIA review of the bond denial "would likely result in weeks or months of further detention and perpetuate the very harm the Court's [previous order granting the habeas petition] was designed to prevent"); *C.A.R.V. v. Wofford*, Case No. 1:25-cv-01395-JLT-SKO, 2026 WL 241823, at *5 n.7 (E.D. Cal. Jan. 29, 2026) (same); *Soriano*, 2026 WL 969764, at *4 (same); *Hechavarria v. Whitaker*, 358 F. Supp. 3d 227, 237 (W.D.N.Y. 2019) ("because of delays inherent in the administrative process, [further] BIA review would result in the very harm that the bond hearing was designed to prevent: 'prolonged' detention without due process during lengthy and backlogged removal proceedings") (citation omitted).   Therefore, although continued detention alone may not constitute irreparable injury, Petitioner faces continued detention subject to lengthy delays in the BIA appeals process and arising out of a potentially

---

[4]  Petitioner also argues that appeal to the BIA would be futile in light of its "documented pattern of affirming deficient bond hearing decisions or declining to apply due-process-based burdens of proof."  (Doc. 8 at 12–13.)  Because the Court finds such an appeal would cause irreparable injury, it need not address Petitioner's futility argument.

3:26-cv-00194-RBM-MSB

constitutionally deficient bond hearing.  The Court thus finds that Petitioner has demonstrated irreparable injury and that waiving exhaustion is appropriate.

**B.    Constitutional Sufficiency of the Bond Hearing**

Petitioner argues that the bond hearing was unlawful and constitutionally deficient because the IJ considered the strength of Petitioner's appeal, failed to provide a reasoned decision, and proceeded with the bond hearing despite the absence of the requested interpreter. (Doc. 8 at 2–5.)  Petitioner's first two arguments are unavailing because the IJ permissibly considered the strength of an appeal and provided a reasoned decision.  His third argument also fails because he cannot demonstrate prejudice.

**1.    IJ's Considerations at the Bond Hearing**

The Court rejects Petitioner's arguments that the IJ did not provide a reasoned decision and relied on inappropriate factors to deny bond.  In considering whether a petitioner poses a flight risk or danger to the community, an IJ "may" consider "any or all of the following:"

> (1) whether the [noncitizen] has a fixed address in the United States; (2) the [noncitizen's] length of residence in the United States; (3) the [noncitizen's] family ties in the United States, and whether they may entitle the [noncitizen] to reside permanently in the United States in the future; (4) the [noncitizen's] employment history; (5) the [noncitizen's] record of appearance in court; (6) the [noncitizen's] criminal record, including the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses; (7) the [noncitizen's] history of immigration violations; (8) any attempts by the [noncitizen] to flee prosecution or otherwise escape from authorities; and (9) the [noncitizen's] manner of entry to the United States.

*In re Guerra*, 24 I&N Dec. 37, 40 (BIA 2006).  The IJ has "broad discretion" in weighing these factors "as long as the decision is reasonable." *Id.* at 40.  "Indeed, an IJ may consider any evidence in the record . . . when assessing flight risk, provided that such evidence is probative and specific." *Perez Velasquez*, 2026 WL 1042479, at *5 (citations omitted).

"Consideration of the strength of a petitioner's appeal is neither unlawful nor unconstitutional. . . .  The likelihood of success of [a noncitizen's] appeal impacts the risk of flight, as someone with a strong case has less incentive to flee." *Singh v. Napolitano*,

No. 08cv464-BTM (JMA), 2011 WL 4041000, at *2 (S.D. Cal. Sept. 9, 2011); *Matter of R-A-V-P*, 27 I&N Dec. 803, 805 (BIA 2020) (noting that an IJ "may consider the likelihood that relief from removal will be granted in determining whether [a noncitizen] warrants a bond"). Thus, the IJ did not violate Petitioner's due process rights or act inappropriately by considering the strength of Petitioner's appeal with the BIA.

Nor did the IJ fail to consider probative evidence. To the contrary, the IJ relied on at least the following: denial of all forms of relief to Petitioner; the previous immigration judge's finding that Petitioner did not provide credible testimony during his removal proceeding; Petitioner's circumvention of lawful pathways to asylum; and Petitioner's attempt to enter the United States without inspection. (Hearing Trans. at 8–10.) In summary, nothing in the record suggests that the IJ failed to apply the correct legal standard in reviewing the evidence at the bond hearing.

### 2. Lack of an Interpreter

The Court next turns to the IJ's decision to proceed without the requested interpreter. Even if the IJ erred by doing so, Petitioner has not demonstrated prejudice by showing how the outcome of his bond hearing may have been affected by the alleged due process violation. *See Gonzalez-Caraveo v. Sessions*, 882 F.3d 885, 894 (9th Cir. 2018). As relevant here, the Court analyzes a due process claim in three steps. First, it asks whether there exists a protected liberty interest. *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989). Second, it asks "whether the procedures attendant upon that deprivation were constitutionally sufficient." *Id.* And third, it asks whether Petitioner was prejudiced by the alleged due process violation. *Perez-Lastor v. INS*, 208 F.3d 773, 780 (9th Cir. 2000).

### a. Liberty Interest

At the first step, it is undisputed that Petitioner has a constitutionally protected interest in applying for custody redetermination; such was the subject of his original Petition before this Court. *See also Zadvydas v. Davis*, 533 U.S. 678, 693 (2001) ("[T]he Due Process Clause applies to all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent.").

### b.      Procedures

At the second step, to determine which procedures are constitutionally sufficient, the Court applies the three-part test in *Mathews v. Eldridge*, 424 U.S. 319 (1976).  The Court considers: (1) "the private interest that will be affected by the official action;" (2) the "risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail."  *Id.* at 335.

First, Petitioner's interest in receiving a bond hearing that comports with due process is "'fundamental:' freedom from imprisonment is at the 'core of the liberty protected by the Due Process Clause.'"  *Hernandez*, 872 F.3d at 993 (quoting *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992)).  Petitioner has now been detained for about 16 months.  (*See* Doc. 1 ¶¶ 14–15.)  "There should be no reasonable dispute that Petitioner has a strong liberty interest to be free from prolonged detention without a [constitutionally sufficient] hearing." *Zagal-Alcaraz v. ICE Field Office*, Case No. 3:19-cv-01358-SB, 2020 WL 1862254, at *7 (D. Or. Mar. 25, 2020) (citing *Singh v. Barr*, 400 F. Supp. 3d 1005, 1021 (S.D. Cal. 2019) (holding that 18-month detention was sufficiently onerous to establish strong private interest)).  This factor thus weighs in Petitioner's favor.

Second, the risk of erroneous deprivation is lessened in this case because, as discussed above (*see supra* Section III.B.1), Petitioner did receive a bond hearing in which the IJ considered relevant evidence. *Cf. Singh v. Andrews*, No. 1:25-cv-00801-KES-SKO (HC), 2025 WL 1918679, at *7 (E.D. Cal. July 11, 2025) (finding the risk of erroneous deprivation high where the petitioner had "not received *any* bond or custody redetermination hearing") (emphasis added).  Additionally, the Court acknowledges that every case relied upon by Petitioner for the idea that a petitioner must be able to meaningfully engage in his hearing through an interpreter concerns a removal proceeding, not a bond hearing.  *See He v. Ashcroft*, 328 F.3d 593, 598 (9th Cir. 2003) (asylum application hearing); *Perez-Lastor*, 208 F.3d at 778 ("*deportation proceedings* must be

10

translated into a language the [noncitizen] understands") (emphasis added); *Hartooni v. INS*, 21 F.3d 336, 340 (9th Cir. 1994) (same); *Tejada-Mata v. INS*, 626 F.2d 721, 726 (9th Cir. 1980) (in a deportation proceeding, "the inexplicable refusal of the [IJ] to permit simultaneous translation of the testimony against petitioner . . . seems unquestionably to be an abuse of his discretion"). The distinction matters because "[b]ond hearings are less formal than immigration court proceedings." *Joseph v. Holder*, 600 F.3d 1235, 1241 n.5 (9th Cir. 2010) (citing BIA Practice Manual § 6.3(b)(ii), available at https://www.justice.gov/eoir/policy-manual-eoir/part-III/bia/chapter-6-3); *see also Matter of Chirinos*, 161 I&N Dec. 276, 277 (BIA 1977) ("the primary consideration in a bail determination is that the parties be able to place the facts as promptly as possible before an impartial arbiter," and "[i]nformal procedures . . . are encouraged so long as prejudice does not result"). Thus, the risk of erroneous deprivation is lessened here because the alleged due process violation occurred in the context of a bond hearing, rather than an asylum or removal hearing. For these reasons, this factor weighs against Petitioner.

Third, the Court must afford significant weight to the government's interest in the "efficient administration of the immigration laws at the border" and the well-settled fact that "control over matters of immigration is a sovereign prerogative, largely within the control of the executive and the legislature." *Landon v. Plasencia*, 459 U.S. 21, 34 (1982). The government also has an interest, though, in "the integrity and accuracy of administrative proceedings in which those interests are furthered." *Najjar v. Reno*, 97 F. Supp. 2d 1329, 1356 (S.D. Fla. 2000), *vacated on other grounds by Al Najjar v. Ashcroft*, 273 F.3d 1330 (11th Cir. 2001), (citing *Bridges v. Wixon*, 326 U.S. 135, 153 (1945) (describing the rules governing immigration proceedings as "safeguards against essentially unfair procedures")). These are both weighty and competing interests. But the Court must also consider "the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews*, 424 U.S. at 335. And bond hearings with interpreters are routine and impose a minimal cost on the government. *See Doe v. Becerra*, 787 F. Supp. 3d 1083, 1094 (E.D. Cal. 2025). Therefore, this factor favors Petitioner.

11

Because two of the *Mathews* factors favor Petitioner, the Court finds that the IJ erred by having the bond hearing without the requested interpreter.

### c.    Prejudice

At the third step, Petitioner argues that the lack of an interpreter at the bond hearing prejudiced him because: (1) he was unable to testify about "the very matters that would tend to reduce perceived flight risk (e.g. his understanding of and willingness to comply with supervision conditions, his concrete release plan and residence, his sponsor's commitment and ability to ensure appearances, and any misunderstandings in the record about contacts or prior proceedings);" and (2) he was unable to consult with his counsel in real time to "confirm key facts" and "respond to the [immigration judge's] concerns as they arose." (Doc. 20 at 2–6.)  The Court disagrees.

A noncitizen "suffers prejudice if the violation potentially affects the outcome of the proceedings." *Perez-Lastor*, 208 F.3d at 780 (cleaned up).  In the context of inadequate interpretation due process claims, the Ninth Circuit has interpreted this standard to be "whether a better translation would have made a difference in the outcome of the hearing," and the Court finds it appropriate to use that standard here, in the context of the *lack* of an interpreter.[5]  *See id.*  "This standard is onerous, but not insurmountable." *Id.*

Petitioner cannot demonstrate prejudice because (1) there is no right to testify at an immigration bond hearing, especially where, as here, Petitioner was represented by counsel; and (2) even if there was, Petitioner has not demonstrated that the testimony he would have given may have made a difference in the outcome of his hearing.

**No right to testify**.  Although Respondents bore the burden of demonstrating flight risk by clear and convincing evidence at the bond hearing, this burden did not require,

---

[5] So too has the Ninth Circuit, albeit in an unpublished case.  *See Alshiabat v. INS*, 125 F.3d 857 (Table), 1997 WL 603878, at *1 ("In order for [the petitioner] to succeed in his due process claim, he must prove that he was prejudiced by the absence of an interpreter . . . .") (citing *Acewicz v. INS*, 984 F.2d 1056, 1063 (9th Cir. 1993)).

under the circumstances of this case, the IJ to provide an opportunity for Petitioner to testify. Indeed, as another district court noted, an Executive Office of Immigration Review ("EOIR") policy suggests that the IJ has discretion to allow or prohibit oral testimony at bond hearings: "At the Immigration Judge's discretion, witnesses may be placed under oath and testimony taken." *Kharis v. Sessions*, Case No. 18-cv-04800-JST, 2018 WL 5809432, at *6 (N.D. Cal. Nov. 6, 2018) (quoting Immigration Court Practice Manual § 8.3(e)(6), available at https://www.justice.gov/eoir/policy-manual-eoir/part-II/icpm/chapter-8-3); *see also Torres Murrillo v. Barr*, Case No. 19-cv-05676-SK, 2019 WL 8723753, at *4 (N.D. Cal. Oct. 23, 2019) ("In the informal context of a bond hearing, the decision whether [ ] to hear oral testimony rests within the IJ's discretion."). The IJ may have a duty to "fully develop the record" by soliciting testimony in bond hearings "where applicants appear without counsel." *See Jacinto v. INS*, 208 F.3d 725, 734–35 (9th Cir. 2000) (finding that the *pro se* petitioner did not receive a full and fair merits hearing because "the immigration judge never gave her the opportunity to present her own additional narrated statement that might have added support to her claim"). But because Petitioner was represented at the bond hearing and the IJ considered the evidence submitted, the IJ had no duty to allow Petitioner to testify further. *See FDIC v. Mallen*, 486 U.S. 230, 247–48 (1988) ("There is no inexorable requirement that oral testimony must be heard in every administrative proceeding in which it is tendered[,]" particularly where it may be "merely cumulative to material that was adequately covered by written submissions or . . . was otherwise unnecessary or improper.").

This conclusion is bolstered by the Ninth Circuit's analysis of "whether oral testimony should be required in any particular case." *Oshodi v. Holder*, 729 F.3d 883, 895 (9th Cir. 2013) (discussing oral testimony during an asylum hearing). The "touchstone" of the inquiry is "the importance of credibility determinations to the type of case presented." *Id.* (citing *Mathews*, 424 U.S. at 335).

> *Mathews* teaches us that cases that hinge on credibility are precisely the types of cases where the probable value of oral testimony is high and the lack of

> oral testimony significantly raises the risk of an erroneous decision. Therefore, the second *Mathews* factor weighs in favor of requiring oral testimony in asylum cases, which often turn solely on credibility determinations.

*Id.* at 896.

It is undisputed that live testimony is fundamental to a full and fair hearing regarding an underlying removal case. Petitioner had such a hearing, where he had the opportunity to testify but chose not to, on September 17, 2025. (Doc. 4-1 at 6–9; *see* Hearing Trans. at 7.) At that hearing, the IJ denied Petitioner's applications for relief, ordered Petitioner removed to Pakistan, and made an adverse credibility determination. (*See* Doc. 4-1 at 6–9; Hearing Trans. at 6.) Although credibility determinations may play a role in the IJ's decision to grant bond, they are not nearly as important in bond hearings as they are in asylum cases. As discussed above, the IJ has broad discretion to consider many factors in making her bond decision. *In re Guerra*, 24 I&N at 40. Because the IJ may "consider any evidence in the record" in making her bond decision, *Perez Velasquez*, 2026 WL 1042479, at *5, decisions in bond hearings, unlike in asylum hearings, do not often "turn solely on credibility determinations." *Oshodi*, 729 F.3d at 895. And to the extent credibility did factor into the IJ's decision here, any testimony by Petitioner at the bond hearing almost certainly would have been tempered by the previous IJ's finding of adverse credibility at the merits hearing. *See Limsico v. United States INS*, 951 F.2d 210, 213 (9th Cir. 1991) (noting that, in the context of an appeal of a decision denying a petitioner's motion to reopen, the BIA can rely on credibility determinations reached in prior hearings in deciding whether a petitioner's affidavit is credible); *Dela Cruz v. Napolitano*, 764 F. Supp. 2d 1197, 1204 (S.D. Cal. 2011) ("although evidence from a bond hearing may not be used in a removal hearing, evidence from a removal hearing may be considered in a bond hearing if it is made part of the record") (citing *Joseph*, 600 F.3d at 1242).

In summary, a bond hearing is not so reliant on credibility determinations that Petitioner's inability to offer live testimony constitutes a due process violation. Rather, the IJ had discretion to prohibit testimony at the bond hearing. It appears that that is what

3:26-cv-00194-RBM-MSB

happened at Petitioner's bond hearing, given the IJ's determination that "the court does not need testimony from the respondent because . . . there is evidence sufficient to rule on the bond." (Hearing Trans. at 2–3.)  Therefore, even if Petitioner had access to an interpreter at the bond hearing, the mere potential ability to testify through said interpreter would not have affected the outcome of the bond hearing because the IJ permissibly exercised her discretion to prohibit testimony.

**No difference in the outcome of the hearing**.  Petitioner argues that, without an interpreter, he could not "personally address, clarify, or rebut" the IJ's findings, nor could he "confirm key facts" and "respond to the [immigration judge's] concerns as they arose." (Doc. 20 at 2–6.)  But Petitioner was represented at the bond hearing, and his counsel submitted evidence and presented oral argument in support of Petitioner's position. (Hearing Trans. at 3–4, 8.)  After considering the record, and despite Petitioner's arguments and evidence, the IJ determined that Petitioner was a flight risk, citing the "tenuous[ness]" of his appeal, his previous adverse credibility determination, his CLP bar, and the circumstances of his entry into the country. (*Id.* at 8–10.)  Even if Petitioner had testified—which, as discussed above, he was not entitled to do—testimony regarding "his understanding of and willingness to comply with supervision conditions, his concrete release plan and residence, [and] his sponsor's commitment and ability to ensure appearances" would not have addressed the factors relied upon by the IJ in denying bond. (*Id*. at 3.)

## IV.   CONCLUSION

For the foregoing reasons, the Motion to Enforce (Doc. 8) is **DENIED**.

**IT IS SO ORDERED.**

DATE:  June 22, 2026

HON. RUTH BERMUDEZ MONTENEGRO
UNITED STATES DISTRICT JUDGE

15

3:26-cv-00194-RBM-MSB